
FILED
2014 Feb-28  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

GEORGIA PRIEST,               )
                               )
           Plaintiff       )
                               )
    vs.                 )     Case No.  5:11-cv-03938-HGD
                               )
U.S. SECURITY ASSOCIATES,   )
INC.,                          )
                               )
           Defendant   )

## MEMORANDUM OPINION

The above-entitled civil action is before the Court on the Motion for Summary Judgment and the Motion to Strike filed by defendant U.S. Security Associates, Inc. (Docs. 30 & 37).  This matter is before the undersigned U.S. Magistrate Judge based on the consent of the parties pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. U.S. Security Associates, Inc. (USSA) filed a Motion for Summary Judgment (Doc. 7), subsequently superceded by the Motion for Summary Judgment now before the Court (Doc. 30), both of which seek to have the case against it dismissed.  Plaintiff has filed a response (Doc. 33), and USSA has filed a reply (Doc. 38).  Plaintiff has filed a Response in Opposition to the Motion to Strike (Doc. 39) and further

Opposition to the Motion for Summary Judgment (Doc. 42).  The matter is now ready for disposition.

As an initial matter, the Motion to Strike is DENIED.[1]  However, the Court recognizes that the subject matter of the Motion to Strike is of limited evidentiary value and its consideration by the Court is subject to this limitation as noted below.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a) (Dec. 2010).  Rule 56(c) provides as follows:

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

---

[1] With the December 1, 2010, change to Rule 56 of the Federal Rules of Civil Procedure, it no longer appears that motions to strike submitted on summary judgment are appropriate.  Revised Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed.R.Civ.P. 56(c)(2).  The Advisory Committee Notes specify as follows:

Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. *There is no need to make a separate motion to strike.* If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed.R.Civ.P. 56, Adv. Comm. Notes, "Subdivision (c)" (2010 Amendments) (emphasis added).

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c) (Dec. 2010).  Defendant, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).  A genuine issue of material fact is shown when the nonmoving party produces evidence so that a reasonable factfinder could return a verdict in her favor.  *Greenberg v. BellSouth*

*Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007).  If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.  In reviewing whether the nonmoving party has met her burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor.  *Tipton v. Bergrohr GMBH-Siegen*, 965 F .2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted).  However, speculation or conjecture cannot create a genuine issue of material fact.  *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir. 2005).  Bare and self- serving allegations when the plaintiff has no personal knowledge are inadequate to carry the plaintiff's burden on summary judgment.  *See Stewart v. Booker T. Washington Ins*., 232 F.3d 844, 851 (11th Cir. 2000) (plaintiff's claim of fact based upon "information and belief" about which she had no personal knowledge and for which there is no other supporting evidence presented is a bare and self-serving allegation that is insufficient to carry her burden on summary judgment).  A "mere scintilla of evidence" in support of the nonmoving party also cannot overcome a motion for summary judgment.  *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

## FACTUAL BACKGROUND

USSA is a national company that supplies security guards to a variety of companies in the United States. It is headquartered in Roswell, Georgia. In 2010, USSA was awarded the contract for security guard services at the International Paper Company facility (IP) in Courtland, Alabama. Its service under the contract was scheduled to begin on August 23, 2010. This contract required USSA to provide both security guard and emergency medical technician (EMT) services at the Courtland IP site.

Prior to USSA being awarded this contract, Weiser Security (Weiser) held the contract for security guard and EMT services at the IP facility. Plaintiff, who is African-American, worked for Weiser and its predecessors, Murray Guard and American Citadel, initially as a security guard for Murray Guard and as a security guard and, subsequently, as an EMT for American Citadel.

At the time that USSA was awarded the contract at the Courtland IP site, Gina Willis, *nee* Tucker, was Site Manager for Weiser. Gary Farris was a Lieutenant for Weiser during this time. All Weiser employees who wished to work for USSA had to apply for positions with USSA and pass background and credit checks. Willis and Farris were eventually hired by USSA and became USSA employees as of August 23, 2010. They remained Weiser employees until that date.

As part of the hiring process, USSA held several town-hall type meetings with the Weiser employees to inform them of USSA's hiring process, policies and procedures.  USSA invited the Weiser employees to submit applications for employment but did not guarantee that all Weiser employees would be hired. Plaintiff attended at least one of these meetings and submitted an application for employment.  To be considered for employment with USSA, employees of Weiser had to complete an application, be over 18 years of age, have a means to travel to and from work, and pass a drug and background check.  (King Depo. at 37, 40).

In addition to the town hall meetings, USSA representatives attended several organizational meetings with the IP representatives to discuss the transition in security guard and EMT services from Weiser to USSA.  Jack King attended several of these meetings on behalf of USSA.  Following one of these meetings, which occurred before USSA took over the IP contract from Weiser, King was introduced to Jack Spillers, who was the head of IP's fire brigade.  During a conversation with King, Spillers told King that there were two Weiser employees that USSA might want to take a close look at before hiring.  The two employees identified by Spillers were plaintiff and Shelvey Parker, another EMT for Weiser.  It is undisputed that King did not know the races of either Priest or Shelvey at the time he asked Willis about them or when he made the decision not to hire Priest.  (King Affid. ¶ 8).

After his conversation with Spillers, King went to Willis' office and told Willis about his conversation with Spillers. Willis told King that Spillers and Parker had personal issues, *i.e.*, that Spillers was "in love with Parker." Willis showed King incident reports and counseling forms regarding plaintiff. Although Willis signed off on all but two of these documents, these were given to plaintiff by a number of different supervisors throughout her employment with American Citadel and Weiser.

These documents reflected what King considered to be disciplinary notices and counseling sessions from April 2008 to March 2010, which reflected that plaintiff was counseled twice for failure to respond to pages; received four security complaints for her inability to get along with other employees and failure to respond to pages or report to work when paged; was issued two incident reports for failure to report to work when paged and another for poor attitude and failure to respond to pages or report to work when on-call; and received one coaching and counseling record because Weiser was unable to contact her by phone or pager. (King Affid. ¶ 7 and Ex. A).

Plaintiff asserted that there were problems with the paging system that kept her from receiving all of her pages. However, there is no evidence that King was aware that there were any problems with the paging system when he decided not to hire plaintiff. (King Depo. at 134). While plaintiff claims that she heard two other

Caucasian employees state that there had been occasions when they did not return pages, there is no evidence in the record that this was actually true or that Willis was aware of and failed to punish them for such conduct.

Plaintiff also states that Caucasian employee Delaine Haraway missed a significant amount of work.  Records submitted corroborate this.  However, a number of the absences are accounted for with doctor's excuses and several days were missed after the death of Haraway's son in an automobile accident.  (Plaintiff's Ex. D). However, there is no record reflecting that Haraway failed to respond to pages. Likewise, there in no evidence that King had any knowledge of Haraway's attendance problems.

Based on the number of disciplinary notices plaintiff received during her employment with Weiser and American Citadel, King ultimately decided not to hire her.  (King Depo. at 97; King Affid. ¶ 8).  King also asked Willis if there were any other employees that he should be concerned about.  She told him "no."  (King Depo. at 86, 111).  However, two other employees of Weiser also were not hired by USSA. Phillip Ferris, a Caucasian security guard working for Weiser, was not hired by USSA because he failed the background check.  (King Depo. at 88; King Affid. ¶ 9).  Mary Terry, also Caucasian, another security guard for Weiser, was not hired by USSA for the same reason.  (*Id.*).  USSA hired eight Weiser security guards that were African-

American, four of which were EMTs.  (King Affid. ¶ 10).  However, the African-American EMTs were part-time employees.  (Willis Depo. at 68).

Prior to USSA taking over the IP contract, plaintiff complained to Weiser District Manager, Abe Gonzalez, on one occasion, that Willis discriminated against her because of her race by allowing Michelle Wright, a Caucasian, to switch job duties with her against her wishes.  She told Gonzalez that there were several incidents where Willis favored white employees over her.  (Priest Depo. at 50-53).  Plaintiff also told Lieutenant Gary Farris that Willis favored Michelle Wright over her with regard to this incident.  (Priest Depo. at 54).  However, King had no knowledge of these complaints.  (King Affid. ¶ 8).  Neither Farris nor Gonzalez had any input into King's hiring decisions.  (King Affid. ¶ 8; Priest Depo. at 53-54).

According to Willis and Farris, on the occasion about which plaintiff complained, Wright was restricted from driving a motor vehicle due to her poor driving record.  In order to patrol her area, Wright would have had to patrol in an open-air golf cart in July; whereas, plaintiff would have been able to patrol in an air-conditioned automobile.  Willis directed plaintiff to switch with Wright to give Wright a break from the heat and to help her asthma, which was exacerbated by driving a golf cart on the dusty roads around the IP facility.  (Willis Decl. ¶ 3).  It is

undisputed that Abe Gonzalez agreed with Willis' decision and directed plaintiff to go along with it.  (Priest Depo. at 52).

Plaintiff was not notified that she would not be working for USSA until after USSA actually assumed the contract on August 23, 2010.  (Priest Depo. at 65-72).

### DISCUSSION

Plaintiff's complaint alleges claims of race discrimination and retaliation.  In her brief in opposition to defendant's motion for summary judgment, plaintiff explicitly declined to offer opposition to the motion with regard to her claim of retaliation.  (Doc. 33 at 27).  Therefore, she has abandoned this claim.  *See, e.g., Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 (11th Cir. 2003); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  In any event, a review of the record evidence fails to reflect any evidence to support a *prima facie* case of retaliation.

Whether an employer intentionally discriminated against an employee or potential employee is a question of fact, which may be proved either through direct or circumstantial evidence.  *See Green v. Sch. Bd. of Hillsborough County*, 25 F.3d 974, 977-78 (11th Cir. 1994).  "Direct evidence of discrimination is evidence, that, 'if believed, proves [the] existence of [a] fact in issue without inference or

presumption.'" *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (quoting

*Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997))

(alterations in original).

Absent such evidence, a plaintiff may prove her case through circumstantial

evidence, using the familiar burden-shifting framework established in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and

subsequent cases. Under this framework, the plaintiff initially must establish a *prima*

*facie* case of discrimination. *See id.* at 802, 93 S.Ct. at 1824. By establishing a *prima*

*facie* case, the plaintiff creates a rebuttable presumption that the employer unlawfully

discriminated against her. *See United States Postal Serv. Bd. of Governors v. Aiken*,

460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). The burden then

shifts to the employer to rebut this presumption by producing evidence that its action

was taken for some legitimate, non-discriminatory reason. *See Texas Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207

(1981). Should the employer meet its burden of production, the presumption of

discrimination is rebutted, and the inquiry "proceeds to a new level of specificity,"

in which the plaintiff must show that the proffered reason really is a pretext for

unlawful discrimination. *See id*. at 255-56, 101 S.Ct. at 1095-96. Although the

intermediate burdens of production shift back and forth, the ultimate burden of

persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff. *See id.* at 253, 101 S.Ct. at 1093; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).

### *Prima Facie* Case

Plaintiff has attempted to demonstrate discrimination by presenting circumstantial evidence sufficient to establish a *prima facie* case of discrimination. In a traditional failure-to-hire case, the plaintiff establishes a *prima facie* case by demonstrating that: (1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002).

Plaintiff is African-American and, thus, a member of a protected class. She applied for and was qualified for the position for which USSA was accepting applications. Although defendant asserts she was not qualified by reason of her alleged failure to answer pages and get along with co-workers, this does not go to her qualifications for the position as a security guard/EMT. She was clearly qualified for the position. Her problems with Weiser and her earlier employers may have affected

USSA's willingness to hire her, but there is no doubt she was qualified for the position.

Despite her qualifications, plaintiff was not hired.  Whether the position remained open or was filled by another person outside her class is more difficult to answer.  However, plaintiff was the only full-time African-American EMT working for Weiser and she was not hired (or re-hired) by USSA.  Further, there is no evidence that any of the full-time EMTs hired by USSA from former Weiser employees was African-American.  Therefore, it appears plaintiff has met the fourth requirement to establish a *prima facie* case of discriminatory failure to hire.

**Articulated Non-discriminatory Reason**

Once the plaintiff has established a *prima facie* case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to proffer a legitimate and non-discriminatory reason for its actions.  *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  The employer's burden is so light as to be virtually weightless, meaning that the employer need merely put forth a legitimate reason for its actions and need not convince the court that the reason offered was the true, motivating force. *See Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1495 (11th Cir. 1989).  If the employer satisfies that burden by articulating a non-discriminatory reason, then the presumption of

discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.  Although the *prima facie* case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the *prima facie* case.  *See Combs*, 106 F.3d at 1528.  Despite this shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Burdine*, 450 U.S. at 253, 101 S.Ct at 1093.  Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Combs*, 106 F.3d at 1529-38 (interpreting *Hicks* and the post- *Hicks* case law); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 920-21 (11th Cir. 1993).

USSA has articulated a legitimate, non-discriminaory reason for failing to hire plaintiff.  According to defendant, plaintiff was not hired by USSA because of her history of disciplinary and performance problems with Weiser and American Citadel. Having offered such a reason, the burden shifts to plaintiff to adduce evidence sufficient for a reasonable jury to conclude that USSA's supposedly legitimate reason is merely a pretext for illegal discrimination.

Plaintiff alleges that defendant's reason is pretextual and unworthy of credence. First, she notes that Willis approved, initiated or directed the issuance of the counseling forms to plaintiff.  She characterizes these as "unjustified."  (Doc. 33, Plaintiff's Brief, at 24).  However, there is no evidence that the decision-maker in the decision not to hire plaintiff, Mr. King, had any knowledge of the "unjustified" nature of the disciplinary reports or of Priest's race.  The evidence presented reflects that King reasonably believed, based on his review of the documents, without any knowledge of plaintiff's race, that Priest had a variety of performance problems, including failing to respond to pages and difficulty getting along with other employees. *See Hawkins v. Ceco Corp*., 883 F.2d 977, 980 n.2 (11th Cir. 1989), *cert. denied*, 495 U.S. 935, 110 S.Ct. 2180, 109 L.Ed.2d 508 (1990) (that the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question

whether the employer believed the employee had done wrong.).   Therefore, this allegation does not demonstrate that the decision not to hire Priest was pretextual.

Plaintiff also alleges that she heard two other Caucasian employees state that they had not returned pages and that Willis did not consider these forms to be "disciplinary actions."   These facts do not help plaintiff.   There is no evidence that King was aware that these two employees failed to return pages.   Nor is there any evidence with regard to the number of times that this occurred or when it occurred. Likewise, there is no evidence that these employees also had problems getting along with co-workers.   However, even if it were assumed that these two employees were guilty of the same type and number of incidents of misconduct as plaintiff, the fact that there is no evidence that King was aware of this makes it irrelevant.

Likewise, regardless of whether Willis and Farris believed these documents reflected disciplinary action, King looked at them as reflecting performance problems on the part of plaintiff.   Thus, what Willis and Farris believed with regard to these documents is also irrelevant.

Plaintiff also asserts that King is responsible for race discrimination because he relied on information provided by Willis to make his decision, rendering the defendant liable under a "cat's paw" theory of liability.   *See Staub v. Proctor Hosp.*, ___ U.S. ___, 131 S.Ct. 1186, 1192, 179 L.Ed.2d 144 (2011).   Under the "cat's paw"

theory of liability, an employer is liable when a biased intermediate employee's actions are "a causal factor in the ultimate employment action" such that the animus of the intermediate employee can be attributed to the employer. *Staub*, 131 S.Ct. at 1193.

In *Staub*, there was evidence that the supervisors' actions that led to the plaintiff's termination were motivated by hostility toward the plaintiff's military obligations. *Id.* at 1194. One supervisor stated that she was trying to get rid of the plaintiff, and the other supervisor was aware of this. *Id.* In this case, there is no evidence that Willis' actions regarding plaintiff were motivated by hostility toward plaintiff's race.

Plaintiff alleges that she did not return pages because her pager was not working properly, because she out of the range of the pager's working area, or because there were problems with the paging system. However, despite this, plaintiff refused to provide Weiser with her cell phone number as an alternative means of contacting her. (Priest Depo. at 95). Given that plaintiff had a means of avoiding the missed pages, but refused to employ it, it is not particularly surprising that Willis was not sympathetic to her excuses.

In any event, while plaintiff asserts that she had excuses for why she was not answering pages, she does not dispute that there were incidents when she did not

answer pages for which she was written up.  She does not claim that Willis made up the events wherein she is alleged to have failed to return pages.  In fact, most, if not all, of the disciplinary actions and counselings reviewed by King were initiated by someone other than Willis.  Thus, plaintiff's complaint regarding Willis is that, even though plaintiff did, in fact, fail to return pages, Willis signed off on the write-ups related to these incidents rather than crediting Priest's excuses for why this occurred.  Simply put, this does not reflect racial animus on the part of Willis.  Furthermore, it is undisputed that, during their ten-year working relationship, Willis made no racist comments to or about plaintiff or anyone else.  (Farris Depo. at 84).  There is no evidence of any conduct by Willis implying a racially discriminatory motivation on her part.  In fact, Willis did not go to King with information regarding plaintiff.  King asked her about  plaintiff after he had been approached  by another IP employee who had expressed concern about plaintiff and another Wiser employee.  (King Depo. at 84-85).  Willis responded with the disciplinary documentation regarding plaintiff.

Plaintiff also asserts that there is evidence that Willis favored Caucasian employees over plaintiff, treated them more leniently and discouraged King from "looking at" the white employee that had been brought to King's attention.

As support for this, plaintiff alleges that two Caucasian employees stated that they did not return pages.  There is no evidence that Willis was aware of this or that

any other supervisors had brought it to her attention similar to the way Priest's failure to return pages was brought to her attention.  Furthermore, there is no evidence that they failed to return calls of a similar volume as plaintiff or that they engaged in other conduct for which plaintiff was counseled.  Thus, there is no way to gauge them as proper comparators with plaintiff.

Plaintiff also asserts that another Caucasian employee was not disciplined despite having a poor record of attendance.  The records of this employee were submitted to the Court.  While they reflect that this employee did have a poor record of attendance, these records also reflect that a number of the days when she was absent, the employee provided a doctor's excuse to justify her absence.  In most cases, even when absent, she did not simply fail to show up.  She called and advised that she was ill.  In addition, several days were missed when the employee's son was killed in an automobile accident.  Furthermore, a poor record of attendance is not the same thing as failing to respond to pages.

In order to establish a *prima facie* case of race discrimination, a plaintiff "must show that his employer treated similarly situated employees outside his classification more favorably."  *Holifield v Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *Coutu v. Martin Cty. Bd. Of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995)). The comparator employee(s) must be similarly situated to the plaintiff "in all relevant

respects." *Id.* (citing *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994);
*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Smith v. Monsanto
Chem. Co.*, 770 F.2d 719, 723 (8th Cir. 1985)).  In analyzing whether employees are
similarly situated when the questioned adverse action is one of discipline, the court
must "'consider whether the employees are involved in or accused of the same or
similar conduct and are disciplined in different ways.'" *Jones v. Bessemer Carraway
Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir.), *opinion modified by* 151 F.3d 1321 (11th
Cir. 1998) (quoting *Holifield*, 115 F.3d at 1562).  Courts, however, are reminded that,
"'Title VII does not take away an employer's right to interpret its rules as it chooses,
and to make determinations as it sees fit under those rules.'" *Maniccia v. Brown*, 171
F.3d 1364, 1369 (11th Cir. 1999) (quoting *Jones*, 137 F.3d at 1311); *see also Nix v.
WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984).
Therefore, "to prevent courts from second-guessing employers' reasonable decisions
and confusing apples with oranges," the similarly situated comparator's misconduct
must be "nearly identical" in "quantity and quality." *Maniccia*, 171 F.3d at 1368-69
(citing *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989)).  The
other employees plaintiff cites as comparators are not "similarly situated" within the
meaning given this term by the Eleventh Circuit.

Finally, plaintiff alleges that Willis discouraged King from looking at another Caucasian employee. However, there is no evidence that the Caucasian employee had a disciplinary record similar to that of plaintiff. According to King, Willis told him this female employee was only named because the (male) person who named her was "in love" with her, but she did not respond to him.

This, again, is not the same type of conduct in which King believed plaintiff to have engaged. Although plaintiff implies that there was a relationship ongoing between these two that would have been a violation of company policy, the evidence presented does not bear this out. Furthermore, because the conduct is not the same, the company is entitled to treat it differently, as it sees fit. This does not reflect racially discriminatory animus on the part of the Willis.

Thus, there is no evidence that Willis was biased against plaintiff or that her actions were intended to cause King not to hire plaintiff. Therefore, plaintiff cannot make out a claim of racial discrimination or pretext under a "cat's paw" theory.

## CONCLUSION

Based on the foregoing, the Court finds that plaintiff has failed to rebut defendant's legitimate, non-discriminatory reason for failing to hire plaintiff. Therefore, defendant's Motion for Summary Judgment is due to be granted.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 28th day of February, 2014.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE